## <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF THE FACTS ........................................................................1

II.     STATEMENT OF THE CLAIMS...................................................................6

III.    LAW AND ARGUMENT ...............................................................................7

      A.      The federal claims brought pursuant to 42 U.S.C. § 1983 fail as a matter of law.............................................................................................................7

            1.      Officer Miller's use of deadly force against the decedent was objectively reasonable.............................................................. 7

            2.      Officer Miller is qualifiedly immune from the Plaintiffs' excessive force claim. ........................................................................... 12

      B.      Plaintiffs' state law claims fail as a matter of law. ...............................14

            1.      Officer Miller is immune from Plaintiffs' state law claims pursuant to R.C. § 2744.03(A)(6)........................................................... 14

            2.      Plaintiffs' intentional infliction of emotional distress claim fails as a matter of law. ...................................................................... 16

            3.      Plaintiffs' assault and battery claim fails as a matter of law................... 17

            4.      Plaintiff's wrongful death claim fails. .................................... 18

            5.      The survivorship claim brought on behalf of Mr. Evans fails. ................ 19

            6.      There is no cause of action under Ohio law for willful, wanton and reckless conduct and this claim fails as a matter of law. ......................... 20

IV.     CONCLUSION.............................................................................................20

i

# TABLE OF AUTHORITIES

## Cases

*Adams v. Metiva*, 31 F. 3d 375 (6th Cir., 1994)..................................................................... 13

*Ally v. Bettancourt*, 134 Ohio App. 3d 303, (Ohio App. 4 Dist., 1999) ..................................... 18

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................................... 8, 13

*Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711 ¶ 32....................................... 16

*Ashford v. Betleyoun*, 9th Dist. No. 22930, 2006-Ohio-2554 ................................................. 19

*Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir.2016)...................................................... 20

*Cass v. City of Dayton*, 770 F.3d 368 (6th Cir. 2014) ................................................... 8, 12, 14, 16

*Cincinnati Ins. Co. v. OANCEA* (Ohio App. 6 Dist.), 2004-Ohio-4272...................................... 20

*Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist.1995) ................................................... 15

*Ferguson v. Leiter*, 220 F. Supp. 2d 875 (N.D. Ohio, Sept. 18, 2002)....................................... 13

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................................. 7, 19

*Griffiths v. Doctors' Hospital*, 150 Ohio App. 3d 234, 237, 2002-Ohio-6173 (5th Dist.) ............ 18

*Griggy v. City of Cuyahoga Falls* (Ohio App. 9 Dist.), 2006-Ohio-252 ..................................... 20

*Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)............................................................... 12

*Harris v. Mt. Sinai Med. Ctr.,* Cuyahoga App. No. 72668, 1998 WL 274507, *5 (May 28,
  1998) .......................................................................................................................... 20

*Hocker v. Pikeville City Police Dept.*, 738 F.3d 150 (6th Cir.2013) .................................... 11, 14

*Jefferson v. Lewis*, 594 F. 3d 454 (6th Cir. 2010).................................................................. 8

*Jones v. Wittenberg University*, 534 F.2d 1203 (6th Cir.1976) ................................................ 19

*Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.*, 43 Ohio App.3d 201, 202, 540
  N.E.2d 305, 308 (9th Dist)............................................................................................. 19, 20

*Love v. Port Clinton*, 27 Ohio St. 3d 98, 99 (Ohio, 1988)........................................................ 18

*M.B. v. Elyria City Bd. of Educ.*, 9th Dist. Lorain No. 05CA008831, 2006-Ohio-4533, ¶ 19 ........ 15

*Maciariello v. Sumner*, 973 F. 2d 295 (4th Cir., 1992)............................................................ 13

*Malley v. Briggs*, 475 U.S. 335 (1986) ................................................................................. 13

*Mitchell v. Forsythe*, 472 U.S. 511 (1985) ........................................................................... 12

*Moldowan v. City of Warren*, 578 F. 3d 351, 375 (6th Cir., 2009)............................................ 12

*Mullins v. Cyranek*, 805 F.3d 760, (6th Cir. 2015)................................................................. 16

*Pearson v. Callahan*, 555 U.S. 223 (2009).................................................................... 12, 13

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)............................................................... 7, 9, 10, 14

*Pollard v. City of Columbus, Ohio*, 780 F.3d 395 (6th Cir.2015) ............................................. 16

*Rural Building of Cincinnati, LLC v. Mercer*, 96 N.E. 3d 882, 2017-Ohio-7226 (1st Dist.)........ 15

*Scott v. Clay County, Tenn.*, 205 F.3d 867 (6th Cir.2000)........................................................ 12

*Smith v. Freland*, 954 F. 2d 343 (6th Cir. 1992)........................................................ 8, 11, 12, 14

*Smith v. John Deere Co*, 83 Ohio App. 3d 398 (Ohio App. l0 Dist., 1993) ................................. 18

*Stafford v. Columbus Bonding Center*, 177 Ohio App. 3d 799 (Ohio App. I Dist., 2008)........... 18

*State v. White*, 142 Ohio St.3d. 277, 2015-Ohio-492 ............................................................ 19

*Tennessee v. Garner*, 105 S. Ct. 1694 (1985)................................................................ 8, 19

*Wade v. Mancuso*, --N.E.3d --, 2018-Ohio-1563, ¶11 (April 23, 2018)...................................... 18

*Wells v. Thomson Newspaper Holdings, Inc.*, 2007 WL 3306608 (S.D. Ohio, 2007) ................ 20

*White v. Pauly*, 137 S.Ct 548 (2017) .................................................................................. 14

*Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007) .................................. 10, 14

*Yeager v. Local Union 20 Teamsters*, 6 Ohio St.3d 369, 374 (1983).......................................... 17

**Statutes**

R.C. § 2744.01 ................................................................................................................ 14
R.C. §2125.01 ................................................................................................................. 18

<u>MEMORANDUM IN SUPPORT</u>

I.  **STATEMENT OF THE FACTS**

Defendant William Jason Miller ("Officer Miller") has been employed as a police officer with the City of Strongsville since August of 2001.  Deposition of Jason Miller ("Miller Depo.") p. 6.  He is assigned to the third shift, and works from 10:00 pm until 7:00 am.  *Id.* at 31-32.  He was working that shift beginning March 6, 2017 and into March 7, 2017.  Around 2:25 am he was at the Strongsville Police Department completing paperwork.  *Id*. at 93.

At that same time on March 7, 2017 Strongsville Police Sgt. Shamus Kelley ("Sgt. Kelley") was performing traffic patrol duties.  Deposition of Shamus Kelley ("Kelley Depo."), p. 44-45. He took a lap around the city, and then entered Interstate 71 ("I-71") and positioned his police vehicle in the median crossover near mile marker 230 where he could observe northbound traffic. *Id.*  Traffic was light, and the weather was mild, with a light rain falling.  *Id.*

From a distance Sgt. Kelley saw a pair of headlights in the high-speed lane.  Kelley Depo. p. 46.  There were two tractor-trailers travelling in the middle lane and it was readily apparent that the vehicle in the high-speed lane was traveling much faster than the tractor-trailers.   *Id.* at 46. Sgt. Kelley activated his radar and got a radar lock that the vehicle in the high speed lane was traveling 80 miles per hour in an area where the posted speed limit was 60 miles per hour.  *Id.* at 46-47; *See also* Deposition Testimony of Amanda Pauley ("Pauley Depo."), p. 88.

Sgt. Kelley pulled out to follow the vehicle, which is now known to be the decedent Roy Evans's ("Mr. Evans") vehicle.   Kelley Depo. p. 48.   As Sgt. Kelley pulled out onto I-71 northbound, he saw the vehicle, which he could identify as a red van, go from the left, high speed lane, across two lanes of traffic and get onto the exit ramp from I-71 to State Route 82.  *Id.* at 49. At that point in time, Sgt. Kelley had not activated his lights or his sirens, and simply intended to

1

conduct a traffic stop once he had closed the gap between himself and the van.  *Id.*

From the bottom of the exit ramp, Sgt. Kelley observed Mr. Evans run the red light at the top of the ramp and turn left.  *Id.* at 52, *see also* Pauley Depo., p.91.  Sgt. Kelley activated his lights and sirens as he traveled up the exit ramp.  He turned left on State Route 82 westbound.  He did not see Mr. Evans's van, only empty lanes of travel ahead on State Route 82.  There is an entrance from westbound 82 onto northbound I-71 shortly after the intersection between State Route 82 and the northbound I-71 exit ramp.  Sgt. Kelley believed that Mr. Evans had gotten off of the interstate and then right back on.  Sgt. Kelley looked down the on-ramp and saw the van merging back onto I-71.  Sgt. Kelley followed Mr. Evans back onto the interstate.  *Id.* at 52-54.

Sgt. Kelley observed that Mr. Evans had turned the van's headlights off.  Sgt. Kelley was able to bridge the gap and was able to catch up to Mr. Evans as the van travelled on I-71.  At that time, both vehicles were traveling about 100 miles per hour.  *Id.* at 54, *see also* Exhibit A-1, Kelley Dash Camera Recording at 02:26:51[1].  Plaintiff Pauley, who was the passenger in the van that night, does not dispute that Mr. Evans was driving at speeds in excess of 100 miles per hour, had turned the van's headlights off and had run a red light.  Pauley Depo. p. 91. Sgt. Kelley got close enough to the vehicle to be able to read its license plate, then backed off the van.  Kelley Depo., 55. Sgt. Kelley radioed that he was in pursuit and requested that other officers assist him.  *Id.* at 56.  Plaintiff Pauley agrees that the decedent's conduct of driving on the highway at a high rate of speed in the rain with no lights posed a danger to the decedent, Plaintiff Pauley, the children who were in the car, and other motorists on the roadway.  Pauley Depo., p. 92.

Mr. Evans' van exited the interstate at the Pearl Road exit.  Kelley Depo., p. 57, *see also*

---

[1] The Strongsville Police vehicles were equipped with dash cameras.  The recordings from these videos are being manually filed as exhibits to the Affidavit of Deputy Chief John Janowski. Throughout this Memorandum, the time stamps indicated correspond with the time stamp on the upper left corner of the video.

Kelley Dash Camera at 2:27:28.  The van turned left onto southbound Pearl Road and then, shortly thereafter, turned right onto the on ramp for I-71 southbound.  *Id.* at 59-60, *see also* Kelley Dash Camera at 2:28:02.

Defendant Officer William Jason Miller ("Officer Miller") was at the police station when he heard Sgt. Kelley radio for back-up.  Miller Depo. p. 93.  Officer Miller positioned himself on Pearl Road north with the intention to deploy stop sticks.  However, as Officer Miller was going to his trunk to get the equipment, he heard Sgt. Kelley state that Mr. Evans was getting back onto I-71 to go southbound.  *Id.* at 95.  Officer Miller got back into his vehicle, entered the Turnpike and then got onto I-71 southbound.  *Id.* at 96.  Officer Miller and several other Strongsville police officers joined the pursuit on I-71 southbound, somewhere between the Pearl Road exit and the Ohio Turnpike exit.  Kelley Depo. p. 64, Miller Dash Camera at 2:29:57.  Sgt. Kelley called off a couple of the officers who had responded, and four officers, including Sgt. Kelley and Officer Miller, continued the pursuit.  *Id.* at p. 65.

Sgt. Kelley gave the order for the officers to try to surround the van and slow it down through a procedure referred to as a "rolling road block."  *Id.* at 67 *see also* Miller Depo. p. 96-97.  As the officers were getting into position, Mr. Evans sideswiped to the right and hit Officer Miller's vehicle, and attempted to push Officer Miller off of the road.  Kelley Depo. p. 69, *see also* Miller Depo. 97-98, Kelley Dash Camera at 2:32:36; Exhibit A-2, Miller Dash Camera at 2:32:36.  The officers backed off after the Mr. Evans used his vehicle as a weapon.  Kelley Depo., p. 69.  After the contact with Officer Miller's vehicle, Mr. Evans's driving became more aggressive.  Kelley Depo., p. 76-77.  He sped up again and changed lanes, going from the right lane across the center lane and into the left lane, narrowly missing a tractor-trailer that was traveling in the center lane. *Id. see also* Miller Dash Camera at 2:33:54; Exhibit A-3, Plut Dash Camera at 2:33:54.

3

The Strongsville Officers fell back behind Mr. Evans' vehicle.  After the rolling road block was ineffective, the officers attempted to get road spikes set up further down the interstate.  Kelley Depo. p. 71.  Sgt. Kelley contacted dispatch to coordinate efforts with the Ohio State Highway Patrol.  *Id.* at 71-72.  The Ohio State Highway Patrol responded to the request for assistance and deployed stop sticks in the area south of the State Route 303 exit, near mile marker 224.  Kelley Depo. p 81, *see also* Miller Depo. p. 97.  The speed of the pursuit began to drop after Mr. Evans' van encountered the stop sticks.  Kelley Depo. p. 81.  Sgt. Kelley observed Mr. Evans struggling with the steering wheel trying to continue his efforts to evade law enforcement.  *Id.* at p. 82.

Sgt. Kelley made the decision to implement another rolling roadblock.  Kelley Depo. p. 87.  Sgt. Kelley decided to take the driver side of the van.  *Id.* at 87-88.  Sgt. Kelley instructed Officer Vlna to take the front of the roadblock, Officer Miller to take a position on the passenger side of the vehicle and Officer Plut to follow behind the van.  *Id.* at 89-91.  As Sgt. Kelley was getting into position, Mr. Evans intentionally caused his vehicle to strike Sgt. Kelley's vehicle.  *Id.* at p. 94, *see also* Pauley Depo. p. 97-98, Plut Dash Camera at 2:39:49, Miller Dash Camera at 2:39:53.  Mr. Evans backed off slightly after the collision and then turned his wheel to the left and intentionally struck Sgt. Kelley's vehicle a second time, that time much harder, pushing Sgt. Kelley's vehicle off to the left side of the interstate.  Kelley Depo. p. 94-95, *see also* Pauley Depo. p. 97-98, Plut Dash Camera at 2:39:57, Kelley Dash Camera at 2:39:53, Miller Dash Camera at 2:39:56.

After the second collision, Mr. Evans's van spun out and came to rest facing east in the southbound lane.  Kelley Depo. p. 97, Plut Dash Camera at 2:39:57, Miller Dash Camera at 2:39:56.  Sgt. Kelley moved his vehicle in front of Mr. Evans' van to end the pursuit and stop any forward motion by the decedent's van.  Kelley Depo. p. 97-98.  As Sgt. Kelley moved forward,

Mr. Evans drove forward and his van struck Sgt. Kelley's vehicle a third time.  *Id.*, *see also* Plut Dash Camera at 2:40:06.

Officer Miller's vehicle collided with the van and came to a stop as the van struck Sgt. Kelley's vehicle for the third time.  Miller Dash Camera at 2:40:08.   Officer Miller opened his door and exited his vehicle.  Plut Dash Camera 2:40:08.  Immediately after striking Sgt. Kelley's vehicle, Mr. Evans put his van in reverse and backed up.  Kelley Depo. p. 97-98, Plut Dash Camera at 2:40:09, Miller Dash Camera at 2:40:08.

Sgt. Kelley again tried to get in front of Mr. Evans' van to stop him from fleeing.  Again Mr. Evans used his vehicle as a weapon and struck Sgt. Kelley's vehicle a fourth time.  Kelley Depo. p. 97-98, Plut Dash Camera at 2:40:08, Miller Dash Camera at 2:40:11  Officer Miller closed the gap between himself and the van, placing his hand on the handle of the van's door just as Mr. Evans rammed his vehicle into Sgt. Kelley's a fourth time.  Miller Depo. p. 69, Plut Dash Camera at 2:40:12.

Officer Miller feared for Sgt. Kelley's life.  He decided to attempt to open Mr. Evans' door and remove him from the vehicle.  Miller Depo. p. 60, Plut Dash Camera at 2:40:12.  Mr. Evans was not looking in Officer Miller's direction until the door opened.  Prior to the door opening, Mr. Evans was intently focused on ramming Sgt. Kelley and getting Sgt. Kelley out of his way.  Miller Depo p. 76.  After opening the door Officer Miller began to give commands and the decedent turned to look at Officer Miller.  As the decedent turned, his right hand came off of the gear shifter and Officer Miller could no longer see it.  *Id.* at 80.

Officer Miller could not retreat, because the decedent was still clearly trying to ram Sgt. Kelley and that placed Sgt. Kelley's life in danger.  Officer Miller was aware that there was a passenger in the vehicle, and that other officers were on the scene behind him.  Miller Depo. p. 81.

As a result, retreating could only increase the danger to the passenger and other officers on the scene. *Id.* at 82. Officer Miller could hear the engine of the van revving and believed that the decedent was going to use his vehicle as a weapon again, this time by driving the van in reverse and pinning Officer Miller between the van's door and his own cruiser. *Id.* at p. 73. He further feared that the decedent may cause harm to Sgt. Kelley, as Mr. Evans still posed a threat to the sergeant whose vehicle had just been rammed by Mr. Evan's truck four times. *Id* at p. 84. Finally, because Officer Miller could not see Mr. Evans hand, he was fearful that Mr. Evans may have been reaching for a weapon. *Id.* at 81. Faced with these circumstances, Officer Miller decided to fire a shot at the decedent. *Id.* at 84, *see also* Pauley Depo., p. 110, Plut Dash Camera at 2:40:14.

Officer Miller expected that the sound of the engine revving would stop after the shot, but it didn't. Because the decedent still had the wherewithal to continue pressing the accelerator and was continuing his assault on Sgt. Kelley, Officer Miller fired a second shot. Miller Depo. p. 85, Plut Dash Camera at 2:40:15. Either just prior to firing the first shot or just after, Officer Miller heard a child's voice crying and realized that there were children in the rear of the van. *Id.* at 86[2].

Officer Miller removed Mr. Evans from the vehicle and immediately began to perform first aid on Mr. Evans in an effort to save his life. Miller Depo. p. 89-90. Despite Officer Miller's efforts, the decedent died immediately on the scene without regaining consciousness. Pauley Depo. p. 122-123.

## II.    STATEMENT OF THE CLAIMS

Plaintiffs Adam Fried, as the administrator of the estate of Mr. Evans, and Ms. Pauley, individually and as the parent and next friend of D.C., Y.E. and R.E asserted the following claims

---

[2] After the use of force, it was learned that a fifteen year old, a six year old and a toddler (Plaintiffs D.C., Y.E. and R.E.) were in the rear cargo area of the van. Miller Depo. p. 62.

against Officer Miller, Sgt. Kelley and the City of Strongsville in their Amended Complaint [Doc. 3]:

1. Excessive Force pursuant to 42 U.S.C. § 1983;
2. Supervisory Liability pursuant to 42 U.S.C. § 1983;
3. Failure to protect pursuant to 42 U.S.C. § 1983;
4. *Monell* claim pursuant to 42 U.S.C. § 1983;
5. State law intentional infliction of emotional distress;
6. State law assault and battery;
7. State law wrongful death;
8. State law survivorship action; and
9. State law willful, wanton and reckless conduct

Following the completion of discovery, Plaintiffs voluntarily dismissed Counts 2, 3 and 4 and all claims asserted against the City of Strongsville, Sgt. Kelley and former Chief Kobak.  [Non-Doc Order Dated December 11, 2018]  As this Memorandum will demonstrate, each of the remaining claims fail as a matter of law and should be dismissed with prejudice.

## III.    LAW AND ARGUMENT

### A.    The federal claims brought pursuant to 42 U.S.C. § 1983 fail as a matter of law.

#### 1.    Officer Miller's use of deadly force against the decedent was objectively reasonable.

A claim that law enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's reasonableness standard.  *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).  The "reasonableness" of a particular use of force must be judged from the prospective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Graham v. Connor*, 490 U.S. 386, 398 (1989).   The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain and rapidly evolving- about the amount of force that is necessary in a particular situation.  *Id.*

7

The Sixth Circuit has recognized that "we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination replace the dangerous and complex world that policemen face every day. What constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure. *Smith v. Freland*, 954 F. 2d 343, 347 (6th Cir. 1992).

A law enforcement officer has a legal right to use deadly force if the officer has reasonable cause to believe that the suspect poses an immediate threat to the safety of the officer or others, and that deadly force is needed to avoid that threat. *Tennessee v. Garner*, 105 S. Ct. 1694 (1985). The reasonableness inquiry is conducted objectively, based on the information possessed by the officer, without regard to facts not known by the officer at the time of the incident. *Jefferson v. Lewis*, 594 F. 3d 454, 451 (6th Cir. 2010), *citing Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The Sixth Circuit has instructed that in assessing deadly-force claims involving vehicular flight, the critical question is whether the officer has "reason to believe that the fleeing car presents an imminent danger to officers and members of the public in the area." *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014). An officer is justified in using deadly force against "a driver who objectively appears ready to drive into an officer or bystander with his car." Deadly force is justified where a driver has demonstrated that he was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around. *Id.*

The deadly force that was utilized in this case was objectively reasonable. Mr. Evans demonstrated on numerous occasions that he was willing to injure any officer or other vehicle that got in the way of his escape. He attempted to run Officer Miller off of the road during the first

rolling roadblock attempted by the Strongsville Police Department.  Shortly thereafter, he crossed all lanes of traffic, narrowly avoiding a collision with a tractor-trailer.  Indeed, the video reflects that the van passed multiple vehicles at a high rate of speed during the pursuit, which lasted more than fifteen minutes and traveled more than twelve miles.  Mr. Evans refused to surrender.  He refused to surrender even after the tires on the van were damaged by the stop sticks.  He refused to surrender after the van spun out.  Rather than surrender, Mr. Evans put the van in reverse and again rammed Sgt. Kelley's police vehicle.  Officer Miller's decision to use deadly force, when confronted with this extremely dangerous situation, was objectively reasonable.

The deadly force utilized in this case is nearly identical to the objectively reasonable force utilized in the Supreme Court case of *Plumhoff*.  In *Plumhoff*, a driver was pulled over for a traffic violation.  When asked to step out of the car, the driver sped away.  The officer conducting the traffic stop began to pursue the driver and, shortly thereafter, additional police officers joined in the pursuit.  572 U.S. at 768-769.  During the pursuit the driver drove his vehicle at speeds in excess of 100 miles per hour.  The officers in *Plumhoff* attempted, but were unsuccessful, in using a rolling roadblock to stop the decedent.  Approximately five minutes into the pursuit, the driver caused his vehicle to contact a police vehicle and spun out, colliding with an officer's cruiser.  The defendant officer got out of his police vehicle and approached the driver.  As the officer approached, the tires of the driver's vehicle started spinning, indicating that the driver was using the accelerator despite the fact that his vehicle was flush against a police cruiser.  At that point, an officer fired three shots at the driver.  The driver then reversed and began to drive away.  As the car fled, two additional officers fired twelve additional shots.  The driver lost control of his vehicle and crashed.  The driver and his passenger both died from some combination of gunshot wounds and injuries suffered in the crash that ended the chase.  *Id*. at 768-770.

9

The *Plumhoff* court found that the deadly force employed by the defendant officers was objectively reasonable. Specifically, the Supreme Court rejected the plaintiffs' assertion that the pursuit was over when the driver's vehicle spun out. The Court held that "under the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the driver] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." *Id.* at 777. Thus the court held that the "flight posed a grave public safety risk" and that "the police acted reasonably in using deadly force to end that risk." *Id.*

The same is true in this case. Mr. Evans posed a risk to the general public and the occupants of his vehicle based upon his erratic driving, including driving at speeds in excess of 100 miles per hour and driving without his headlights on a freeway, at night, in the rain. On multiple occasions Mr. Evans used his vehicle as a weapon, attempting to run Officer Miller off of the road during the first rolling road block and then intentionally driving his vehicle into Sgt. Kelley's vehicle on four occasions. Just as in *Plumhoff*, Officer Miller's decision to use deadly force was objectively reasonable.

The Sixth Circuit has routinely held that the use of deadly force in similar circumstances is objectively reasonable. For example, in *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) the Sixth Circuit affirmed summary judgment in favor of a police officer who ended a police pursuit through the use of deadly force. In that case, the law enforcement officers attempted to box the fleeing suspect in with their vehicles. The suspect struck one of the officers' vehicles and then, after one of the police officers approached the vehicle with his gun drawn, drove off. The other officer then used deadly force to stop the suspect from fleeing. The Sixth Circuit found that the use of force was reasonable, noting that the officer was "faced with a difficult choice:

10

1) use deadly force to apprehend a suspect who had demonstrated a willingness to risk the injury of others in order to escape or 2) allow [the suspect] to flee, give chase and take the chance that [the suspect] would further injure [the other officer] or an innocent civilian in his efforts to avoid capture." *Id.* at 486.

In *Hocker v. Pikeville City Police Dept.*, 738 F.3d 150 (6th Cir.2013) the suspect led police on a chase that lasted several miles, reaching speeds in excess of 70 miles per hour with his lights off. The suspect pulled onto a gravel road, then reversed and rammed a police cruiser, pushing the cruiser thirty feet.  The officers that had been pursuing fired twenty shots at the suspect, wounding him.  The Sixth Circuit affirmed summary judgment in favor of the officers, finding that the "officers' responses to the escalating risks created by [the suspect's] actions are precisely the kinds of 'split second judgment- in circumstances that are tense, uncertain and rapidly evolving'- that they may, sometimes must, take in the line of duty." *Id.* at 154.  *See also Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (officer's use of deadly force was reasonable after suspect smashed officer's cruiser, then tried to maneuver around the damaged cruiser to escape).

As these cases establish, the use of deadly force by Officer Miller was objectively reasonable.  As a result, Mr. Evans' Fourth Amendment rights were not violated, and Officer Miller is entitled to summary judgment on the excessive force claim brought by the Estate.

The excessive force claims brought by Plaintiff Pauley, individually and on behalf of D.C., Y.E. and R.E necessarily, therefore, fail as a matter of law.  The Sixth Circuit has found summary judgment appropriate in other cases involving similar fact patterns which resulted in harm to the passengers in a fleeing vehicle.  For example, in *Cass v. City of Dayton*, 770 F.3d 368 (6th Cir.

2014) and *Scott v. Clay County, Tenn.*, 205 F.3d 867 (6th Cir.2000)[3] suit was filed after the passengers in a fleeing vehicle were shot during the course of the pursuit.  In each of those cases, the use of force was found objectively reasonable based upon the conduct of the vehicle's driver. As described above, the force that was utilized by Officer Miller during the course of the high speed chase, ultimately culminating in the use of deadly force, was reasonable. The claims brought by Plaintiff Pauley on her own behalf and on behalf of her children necessarily fail as a matter of law.

The Plaintiffs' Fourth Amendment right to be free from excessive force was not violated and Count 1 should be dismissed as a matter of law.

### 2. Officer Miller is qualifiedly immune from the Plaintiffs' excessive force claim.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), *citing Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the "objective legal reasonableness of the action."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

When a defendant official raises qualified immunity as an affirmative defense, the plaintiff bears the burden of demonstrating that the official is not entitled to that defense.  *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir.2009).  Qualified immunity shields federal and state

---

[3] The plaintiffs in both the *Cass* and *Smith* cases were injured (in the *Cass* case killed) as a result of the deadly force used to terminate the pursuit.  It is undisputed that neither Plaintiff Pauley nor her children were injured as a result of the use of deadly force.

officials from liability unless the plaintiff can prove:  (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.  *Pearson*, 555 U.S. at 231.  Importantly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This means that officials are not liable for bad guesses in gray areas; rather, they are only liable for transgressing bright lines.  *Ferguson v. Leiter*, 220 F.Supp.2d 875, 880 (N.D. Ohio 2002), *citing Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992).

Qualified immunity protects the official from making a mistake, regardless of whether his error is a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact. *Pearson*, 555 at 231.  In making this determination, the Court is required to employ a standard of objective reasonableness and in doing so, to analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his or her conduct was lawful, in light of clearly established law and the information that he possessed.  *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).

Applying this standard to this case, it is evident that Officer Miller is entitled to qualified immunity.  As this Memorandum has demonstrated, Officer Miller's use of deadly force was objectively reasonable and did not violate the Plaintiff's constitutional rights.  For this reason alone, Officer Miller is entitled to qualified immunity.

However, even if it is determined that a jury could find that his conduct violated the Plaintiffs' constitutional rights, he should nonetheless be found to be entitled to qualified immunity because the unlawfulness of his conduct was not clearly established on March 7, 2017.  A Plaintiff cannot satisfy the second prong of the qualified immunity analysis by simply alleging a violation of extremely abstract rights.  *Anderson*, 533 U.S. at 639.  Instead, the right that the official is

alleged to have violated must be clearly established in a more particularized, and hence more relevant sense:  the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.  *Id.* at 639-40.  "'Clearly established law' should not be defined "at a high level of generality."  *White v. Pauly*, 137 S.Ct 548, 552 (2017), Instead, "the clearly established law must be particularized to the facts of the case."  *Id*.

Indeed, Officer Miller was entitled to rely upon the Supreme Court decision in *Plumhoff* and the Sixth Circuit precedent established in *Williams*, *Hocker*, *Smith* and *Cass*.  Each of these cases found that an officer is justified in using deadly force against a driver of a fleeing vehicle when the officer has reason to believe that the fleeing car presents an imminent danger to officers and members of the public in the area.  Based upon this precedent, it cannot be said that the law had clearly established that Officer Miller's use of deadly force on March 7, 2017 violated the Plaintiffs' constitutional rights and, for this reason, Officer Miller is entitled to qualified immunity. The Plaintiffs constitutional claim should be dismissed.

**B.      Plaintiffs' state law claims fail as a matter of law.**

**1.      Officer Miller is immune from Plaintiffs' state law claims pursuant to R.C. § 2744.03(A)(6).**

There is no dispute that Officer Miller is an employee of the City of Strongsville.  Miller Depo. p. 6.  Similarly, there is no dispute that under Ohio law the City of Strongsville is a "political subdivision."  *See* R.C. § 2744.01(F); Doc. 3, Amended Complaint ¶ 10.

Section 2744.03(A)(6) of the Ohio Revised Code provides immunity from liability to employees of political subdivisions.  That section provides:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability: …

(6)  … [T]he employee [of a political subdivision] is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

By its plain language, R.C. § 2744.03(A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist.1995). As with the subdivision itself, this presumption may only be overcome by demonstrating that an exception to immunity applies. *M.B. v. Elyria City Bd. of Educ.*, 9th Dist. Lorain No. 05CA008831, 2006-Ohio-4533, ¶ 19.

The evidence produced in this case establishes that Officer Miller was acting within the course and scope of his employment at all times during the course of the pursuit, up to and including the use of deadly force. As a result, the exception to immunity contained at R.C. § 2744.03(A)(6) does not apply. There are no statutes under Ohio law that expressly impose liability under the facts of this case. The exception contained at R.C. § 2744.03(A)(6)(c) does not apply.

The evidence produced in this case similarly establishes that Officer Miller did not act "with malicious purpose, in bad faith, or in a wanton or reckless manner" as is required for the exception contained at R.C. § 2744.03(A)(6)(b) to apply.

"Malicious purpose" has been defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Rural Building of Cincinnati, LLC v. Mercer*, 96 N.E. 3d 882, 2017-Ohio-7226 (1st Dist.). Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio

15

St.3d 380, 2012-Ohio-5711 ¶ 32.  "Wanton misconduct" is the failure to exercise any care toward those to whom a duty of care is owed in circumstances where there is a probability that harm will result."  *Id* at ¶ 33.  "Reckless conduct" is characterized by a conscious disregard or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.  *Id.* at ¶ 34.

The Sixth Circuit has concluded that a finding that an officer's use of deadly force was objectively reasonable forecloses related state law claims against an officer based upon that use of force.  *Cass*, 770 F.3d at 377 ("having failed to demonstrate that [the officer's] conduct was objectively unreasonable, he cannot demonstrate that [the officer] acted with malicious purpose, in bad faith or in a wanton or reckless manner."); *Mullins v. Cyranek*, 805 F.3d 760, 769 (6ᵗʰ Cir. 2015) ("Because we find that [the officer's] use of deadly force was not objectively unreasonable under the circumstances, it follows that he did not act with the 'malicious purpose, in bad faith or in a wanton or reckless matter' as required to avoid statutory immunity under Ohio law."); *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 404 (6ᵗʰ Cir.2015) ("If the officers were objectively reasonable in shooting [the decedent], it logically follows that they could not have been reckless in shooting [the decedent.]").

As described above, Officer Miller's use of deadly force was objectively reasonable.  As a result, he is entitled to immunity pursuant to R.C. § 2744.03(A)(6) and all state law claims asserted against him should be dismissed with prejudice.

## 2.  Plaintiffs' intentional infliction of emotional distress claim fails as a matter of law.

Under Ohio law "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Yeager v. Local Union 20*

*Teamsters*, 6 Ohio St.3d 369, 374 (1983) (overruled on unrelated grounds).

A defendant can only be held liable for intentional infliction of emotional distress when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St.3d at 375.  It is not enough that a defendant has acted with an intent to commit a tort, a criminal act or to inflict emotional distress, or even that a defendant's conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.  Rather, a plaintiff must be able to show devastating injury as a consequence of intentional conduct so repugnant that it shocks the conscience.  *Id.*

In this case, there is no evidence that Officer Miller acted with the intention of causing Plaintiffs Pauley, D.C., Y.E. and R.E. emotional distress.  Instead, the evidence establishes that Officer Miller acted with a single purpose: to stop the threat posed by Mr. Evans through the use of deadly force.  Moreover, the undisputed evidence establishes that Officer Miller was unaware of the presence of Y.E. and R.E in the rear cargo area of the van and that he was not aware of D.C.'s presence in the rear of the van until immediately before or after the use of force.  Miller Depo. p. 86.  The evidence does not support Plaintiffs' claim for intentional infliction of emotional distress and this claim fails as a matter of law.

### 3. Plaintiffs' assault and battery claim fails as a matter of law.

Under Ohio law, the tort of assault is defined as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably placed the other in fear of such contact." The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching.  An essential element is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.

17

*Smith v. John Deere Co*, 83 Ohio App. 3d 398, 406 (Ohio App. l0 Dist., 1993).  Battery is an intentional contact with another that is harmful or offensive. *Stafford v. Columbus Bonding Center*, 177 Ohio App. 3d 799, 810 (Ohio App. I Dist., 2008), *citing Love v. Port Clinton*, 27 Ohio St. 3d 98, 99 (Ohio, 1988).

There is no evidence that Officer Miller touched or threatened to touch Plaintiffs Pauley, D.C., Y.E. or R.E.  Their assault and battery claims fail as a matter of law. The assault and battery claim asserted on behalf of Mr. Evans similarly fails.  Officers are privileged to commit battery when making a lawful seizure. *Ally v. Bettancourt*, 134 Ohio App. 3d 303, 313 (Ohio App. 4 Dist., 1999).  As described above, Officer Miller lawfully utilized force to seize Mr. Evans.  As a result, the assault and battery claims asserted on his behalf fail as a matter of law.  Officer Miller is entitled to summary judgment on this claim.

### 4.  Plaintiff's wrongful death claim fails.

A wrongful death claim is a statutory cause of action providing for damages proportioned to the pecuniary injury resulting to the persons for whose benefit the action is brought.  R.C. §2125.01, *Griffiths v. Doctors' Hospital*, 150 Ohio App. 3d 234, 237, 2002-Ohio-6173 (5th Dist.).  In order to prevail on a claim for wrongful death, the plaintiff must prove: (1) a wrongful act, neglect or default of the defendant that proximately caused the death and that would have entitled the decedent to maintain an action and recover damages if death had not ensured, 2) the decedent was survived by a spouse, children, parents or other next of kin and 3) the survivors suffered damages by reason of the wrongful death.  *Wade v. Mancuso*, --N.E.3d --, 2018-Ohio-1563, ¶11 (April 23, 2018).

Ohio law recognizes that a police officer is justified at common law to use reasonable force in the course and scope of his law enforcement duties.  *State v. White*, 142 Ohio St.3d. 277, 2015-

Ohio-492.  In determining whether an officer was justified in using deadly force, Ohio courts follow the objectively reasonable standard established by the United States Supreme Court in *Graham* and *Garner* in evaluating whether a police officer was justified to use deadly force.  Even more generally, Ohio courts have held that a defendant may be relieved of liability for tortious conduct by proving that such conduct was in self-defense.  *Ashford v. Betleyoun*, 9th Dist. No. 22930, 2006-Ohio-2554.

As the Memorandum has demonstrated, Officer Miller acted objectively reasonable in utilizing deadly force against Mr. Evans.  The evidence establishes that Mr. Evans led police on a chase that lasted more than fifteen minutes and spanned more than twelve miles.  During that chase, Mr. Evans drove at speeds exceeding 100 miles per hour, drove aggressively and, in fact, drove into the Strongsville police vehicles on multiple occasions.  Mr. Evans failed to stop when stop sticks were deployed.  He failed to stop after his tires fell off.  He did not surrender even after he lost control of his vehicle.  Instead, he put the van in reverse and again rammed in Sgt. Kelley's police cruise.  The shots were fired nearly simultaneously to the final strike of Sgt. Kelley's vehicle.  The undisputed evidence clearly demonstrates that Officer Miller's use of force was objectively reasonable and, as a result, the wrongful death claim brought on behalf of Mr. Evans's estate should be dismissed.  Officer Miller's Motion for Summary Judgment should be granted.

### 5.      The survivorship claim brought on behalf of Mr. Evans fails.

A survivorship action may be brought by the decedent's personal representative on behalf of her estate.  *Jones v. Wittenberg University*, 534 F.2d 1203, 1207 (6th Cir.1976).  In order to succeed on a survivorship claim, a plaintiff must demonstrate that the decedent suffered conscious pain and suffering.  *Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.*, 43 Ohio App.3d 201, 202, 540 N.E.2d 305, 308 (9th Dist); *Harris v. Mt. Sinai Med. Ctr.,* Cuyahoga App. No. 72668,

1998 WL 274507,  *5 (May 28, 1998).  However, a "decedent may not recover for pain and suffering when it is shown that the decedent was rendered unconscious at the instant of the injury and died of such injuries without ever having regained consciousness." *Laverick*, 43 Ohio App.3d at 202.

In this case there is no evidence that the decedent ever regained consciousness after Officer Miller employed deadly force.  Indeed, Plaintiff Pauley testified that Mr. Evans "died after the first shot, the life went out of him…"  Pauley Depo. p. 122.

Consequently, this claim fails as a matter of law and summary judgment should be granted in favor of Officer Miller.

### 6. There is no cause of action under Ohio law for willful, wanton and reckless conduct and this claim fails as a matter of law.

Reckless, wanton or willful conduct is not a stand-alone cause of action under Ohio law. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir.2016).  Ohio appellate courts have similarly held that "[w]illful, wanton, and reckless conduct is technically not a separate cause of action, but a level of intent which negates certain defenses which might be available in an ordinary negligence action." *Griggy v. City of Cuyahoga Falls* (Ohio App. 9 Dist.), 2006-Ohio-252, quoting *Cincinnati Ins. Co. v. OANCEA* (Ohio App. 6 Dist.), 2004-Ohio-4272. *See also Wells v. Thomson Newspaper Holdings, Inc.*, 2007 WL 3306608 (S.D. Ohio, 2007) ("The Court is not aware of any case in Ohio jurisprudence that expressly supports the assertion that 'willful and wanton misconduct' provides a separate basis of liability.").  As the Plaintiffs have not articulated a cognizable claim under Ohio law, this count should be dismissed with prejudice.

## IV. CONCLUSION

For these reasons, the Officer Miller's Motion for Summary Judgment should be granted and all claims asserted by Plaintiffs should be dismissed with prejudice.

20

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

_s/Cara M. Wright_
TODD M. RASKIN  (0003625)
STEVEN K. KELLEY  (0023747)
CARA M. WRIGHT  (0084583)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    traskin@mrrlaw.com
          skelley@mrrlaw.com
          cwright@mrrlaw.com

*Counsel for Defendant Officer Jason Miller*

TRAVR-180163/D's MSJ